Argued May 13; affirmed June 22, 1937

# LAKEVIEW PINE LUMBER CO. *v.* BOUTIN

(69 P. (2d) 296)

*Claud H. Giles*, of Marshfield, for appellant.

*Forrest E. Cooper*, of Lakeview, for respondent.

ROSSMAN, J. The judgment attacked by this appeal was entered in an action wherein the plaintiff prayed for the recovery of damages arising out of the defendant's alleged conversion of a quantity of lumber owned by the plaintiff.

The plaintiff operated a sawmill in Lakeview, but possessed no planing mill. The defendant, who was engaged in the lumber business at Willow Ranch, California, a few miles south of Lakeview, operated a planing mill as a part of her plant. Plaintiff and defendant, in October, 1932, entered into an oral contract some of the terms of which are the only matter of controversy in this appeal. Pursuant to this contract, the plaintiff shipped rough lumber to the defendant for planing and reshipment to its customers. The defendant not only surfaced the material but also graded it as it left the planer. Accompanying each shipment of rough lumber were directions for the reshipment of that part of the surfaced material which conformed to the grades mentioned in the shipping directions. Apparently it was impossible to grade the lumber accurately in its rough condition, and therefore the defendant was not only required to surface the lumber but also to grade it and ship the part which, in finished condition, conformed to the shipping directions. The remainder of the material, whether above or below the specified grades, is termed "fall-downs" by the parties, and the contract required the defendant to assume possession of it. So far the terms of the contract are free from dispute; and likewise there is no controversy concerning the material which was

shipped, nor the sums which the defendant was entitled to receive for her services.

The dispute concerns the fall-downs. The plaintiff claims that the contract required the defendant to keep the fall-downs separate from her own material. The defendant contends that the contract permitted her to intermingle the fall-downs with like material owned by herself and merely required her to send to the plaintiff statements showing the amount of material in her yard subject to the plaintiff's orders. She insists that she was always able to give the plaintiff either its own material or material owned by herself of like quality, and that the contract required her to do no more. She admits that she intermingled plaintiff's fall-downs with material of like grade owned by herself, and furnished some evidence indicating that the plaintiff was aware of this fact.

After plaintiff's material had been placed in sheds with defendant's lumber it was impossible to distinguish the lumber of the one from that of the other. From these piles the defendant was constantly drawing material, and at no time was it possible to determine whether she was shipping material that had come from the plaintiff's plant or material which her mill had manufactured. In July, 1933, a fire destroyed all of the surfaced material upon the defendant's premises. The plaintiff claims that it was the defendant's duty, as a bailee, to have kept the material separate and not to have used any of its lumber, and that, therefore, the defendant's above-described course of conduct constituted a conversion of the plaintiff's material. The defendant insists that the terms of the contract justified her course of action and that, since no claim is made that the fire was caused by negligence, the plaintiff's action cannot be maintained.

W. D. Starbird, president and manager of the plaintiff, swore that when he effected this contract with G. W. Cameron, the defendant's agent, he (Starbird) was particular to include in the contract, oral though it was, a provision that plaintiff's fall-downs should not be intermingled with the defendant's lumber. He swore that a previous contract which he had with another planing mill and which did not contain such a provision had proven unsatisfactory. Concerning the contract which he and Cameron formed, Starbird swore: "It was my understanding that the lumber was to be kept separate. * * * I brought up the point that former previous millwork we had had done on the same basis was unsatisfactory because of the intermingling of grades." He was positive that he emphasized this past experience while negotiating with Cameron. After giving this and other testimony concerning the contract, he swore positively, "The lumber was to be kept separate."

Mr. Cameron, the only witness for the defendant who testified concerning the conversation just mentioned, stated that the agreement did not contemplate a separation of materials by ownership. After the fire the parties determined through correspondence the amount due the defendant for planing charges, and also the amount of the plaintiff's material upon the defendant's premises at the time of the fire. In the course of this correspondence, the defendant wrote to the plaintiff:

"Regarding that part of your letter stating that Mr. Knack said that all of your lumber was in one small bin in the surfaced shed; he should have told you that the only stock which was kept separate from ours was in this bin, it being the only stock of that particular grade which we had in our storage shed at that time. We both, of course, realize that it was impossible to

preserve the identity of each piece after surfacing or remanufacturing so they were taken care of by giving you credit for footage as the items developed and charging you with footage as shipped out on your orders or purchased by us.''

According to Starbird, this letter was the first intimation the plaintiff had received of the intermingling. Shortly after the plaintiff's receipt of this letter, F. E. Cooper, its attorney, called upon the defendant. He testified that he told the latter: ''Under the agreement between the parties, the lumber was supposed to have been kept separate,'' and that then ''Miss Boutin assured me that was just the way the contract had been performed; that they had kept that lumber separate and that it had been performed just the way Cap (Starbird) wanted it to.'' Then, according to Cooper, Cameron appeared and, after he had given his version of the contract, Miss Boutin withdrew the statement just mentioned. Miss Boutin did not testify.

The trial judge, after hearing the four witnesses and asking many questions which clearly indicate that he had a practical understanding of the subject matter, entered detailed findings in favor of the plaintiff's version of this agreement. They recite that this contract imposed upon the defendant the duty ''to hold the outs, rejects and fall-down in grade lumber upon her premises as plaintiff's property, subject to plaintiff's orders and separate and apart from her own property and segregated as to grades and dimensions, she to be paid a handling charge therefore when subsequently removed by the plaintiff. Said agreement did not provide that the defendant could draw upon plaintiff's property for her personal benefit or that the defendant would sell portions of her own stock to

plaintiff for the accommodation of plaintiff". It will be observed that his findings are fortified with substantial evidence. It may be that the agreement was as Cameron claimed, but the judicial officer who saw the witnesses and asked many questions accepted the version given by the plaintiff's witnesses. Our reading of the record persuades us that the contract was as alleged by the plaintiff. We have not failed to consider the defendant's contentions that Starbird visited the defendant's plant and observed that the lumber was not being kept in separate bins. The evidence produced by the defendant in support of this contention was contradicted and explained by Starbird. We do not believe that defendant's evidence justifies a conclusion that the plaintiff's officials knew that the defendant was violating the aforementioned provision of the contract.

Well-established principles of law that need no buttressing by citation of authorities require the conclusion that when the defendant, from time to time, helped herself to material owned by the plaintiff she converted it to her own use and must pay to the plaintiff the reasonable value of the same. Both parties agree that the defendant's failure to keep the material separate freed her from expense, and that when she treated the plaintiff's material as her own she thereby increased her supply; thus enabling her to accept orders that might otherwise have had to be rejected. The appeal does not challenge the amount of the recovery.

The above, we believe, disposes of all of the assignments of error. Matters mentioned in the appellant's brief not specifically dealt with herein have not escaped our attention. The judgment of the circuit court is affirmed.

BEAN, C. J., and KELLY and CAMPBELL, JJ., concur.